UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)



FILED
AUG 3 1 2009
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| **GARY L. SHARP**<br>19414 Misty Cove<br>Katy, TX 77449<br><br>          Plaintiff,<br><br>v.<br><br>**JONES PRINTING SERVICE, INC.**<br>931 Ventures Way<br>Chesapeake, VA 23320<br><br>**Registered Agent for Defendant**<br>Bryan M. Jones<br>P.O. Box 1786<br>Chesapeake, VA 23327-1786<br><br>and<br><br>**HARRY A. JONES**<br>931 Ventures Way<br>Chesapeake, VA 23320<br><br>          Defendants. | Civil Action No. 2:09cv429<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1. Gary L. Sharp (hereafter "Mr. Sharp" or "Plaintiff Sharp") brings this action for compensatory and liquidated damages pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq*. Defendants, and/or agents acting on their behalf, discriminated against Mr. Sharp in violation of USERRA when Defendants failed to reemploy him after his return from involuntary active military reserve duty with the United States Navy.

2. Mr. Sharp also brings this action for injunctive relief and damages based on the denial of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Defendants, and/or agents acting on their behalf, regarded Mr. Sharp as being disabled and refused to hire him in violation of the ADA.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 38 U.S.C. § 4323(b)(3), 42 U.S.C. § 12117 and 28 U.S.C. §§ 1331.

4. Pursuant to 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391 venue is proper in the Eastern District of Virginia because Defendants maintain a place of business in the Commonwealth of Virginia and Defendants employed Mr. Sharp in Chesapeake, Virginia.

## PARTIES

5. Defendants employed Mr. Sharp as a Bindery operator at their Chesapeake, VA office from June 18, 1998 to May 5, 2003.

6. Defendant Jones Printing Service, Inc. ("Jones Printing) is a Virginia corporation and maintains a place of business in Chesapeake, Virginia.

7. Defendant Harry A. Jones is President of Jones Printing and conducts business in Chesapeake, Virginia.

## EXHAUSTION OF REMEDIES

8. Mr. Sharp exhausted all administrative requirements that apply to the processing of his ADA claim, including the timely filing of an EEOC complaint and receipt of a Notice of Right to Sue.

## FACTS

9. The averments set forth in paragraphs 1 through 8 are adopted and incorporated herein by reference.

10. Since August 1991, Mr. Sharp has served as a member of the United States Navy Reserves.

11. On June 18, 1998, Jones Printing hired Mr. Sharp as a Bindery Operator.

12. In October 2001, the Navy Reserves notified Mr. Sharp that he would be mobilized.

13. Mr. Sharp notified Harry A. Jones, President of Jones Printing, of his mobilization on October 13, 2001. Mr. Sharp hand-delivered a copy of the Navy Reserve's mobilization orders to Mr. Jones.

14. During Mr. Sharp's reserve duty, he served as a Military Police Officer in the Norfolk Naval Air Reserve in Norfolk, Virginia, from November 7, 2001, to June 12, 2002.

15. When Mr. Sharp returned from his mobilization, he requested reemployment as a Bindery Operator at the Jones Printing on or about the end of June or the beginning of July 2002. Mr. Sharp communicated his request for reemployment to his supervisor, Rusty Williams, via telephone.

16. On or about the end of July 2002, Mr. Sharp returned to work as a Bindery Operator. However, upon Mr. Sharp's return to Jones Printing, Defendants discriminated against

him in violation of § 4311, § 4312, and § 4313 of USERRA. First, Defendants denied Mr. Sharp a bonus owed to him during the mobilization period. Second, Defendants assigned Mr. Sharp to the night shift, a shift that Mr. Sharp did not work prior to his mobilization. Third, Defendants refused to retrain Mr. Sharp on a folder and stitcher machine. Finally, Defendants failed to promptly reemploy Mr. Sharp as a Bindery Operator.

17. Mr. Sharp contacted the Employer Support for the Guard and Reserve for assistance in enforcing his rights under USERRA.

18. After intervention by the Department of Labor, Defendants (1) issued Mr. Sharp his bonus check, (2) assigned Mr. Sharp back to the day shift, and (3) retrained Mr. Sharp on the folder and stitcher machine.

19. On March 18, 2003, Mr. Sharp received notice from the Naval Air Reserves of his mobilization as a Military Police Officer to the Sigonella Naval Air Station in Sicily, Italy. Mr. Sharp notified Mr. Jones of his mobilization via telephone.

20. On March 28, 2003, the Navy Reserves mobilized Mr. Sharp as a Military Police Officer. Mr. Sharp expected his mobilization to Sigonella Naval Air Station to end within one year.

21. On June 18, 2003, Mr. Sharp experienced a service related injury to his right rotator cuff during training exercises at the Sigonella Naval Air Station.

22. Because of the injury, the Navy ended Mr. Sharp's mobilization on July 16, 2003. In total, Mr. Sharp served in the Navy Reserves for 111 days, from March 28, 2003, to July 16, 2003.

23. On July 19, 2003, Mr. Sharp notified Mr. Jones of his injury and the required rehabilitation.

24. After eight months of pre-rehabilitation to prepare for surgery, Mr. Sharp's physicians performed rotator cuff surgery on May 2, 2004.

25. From August 2003 to May 2005, during the period of Mr. Sharp's pre-rehabilitation and rehabilitation, he submitted a monthly "Employer Verification" form issued by the Navy Reserve for completion by Mr. Jones. During Mr. Sharp's rehabilitation period, he received medical benefits and incapacitation pay. The "Employer Verification" form required Mr. Jones to identify and describe Mr. Sharp's duties a Bindery Operator at Jones Printing. The information provided by Mr. Jones on the "Employer Verification" form assisted Navy physicians in determining when Mr. Sharp would be physically able to perform the duties of his position.

26. From August 2003 to May 2005, Mr. Sharp submitted to Mr. Jones the Standard Form 600 ("SF-600") as an attachment to the Employer Verification form. The SF-600 contained notes from Mr. Sharp's doctor informing Mr. Jones as to the status of Mr. Sharp's injury and his ability to perform his duties as a Bindery Operator.

27. On September 4, 2003, Mr. Jones completed an Employer Verification form. On the form, Mr. Jones answered "No" to the following statements on the form:

    a. This Employee is able to perform the full duties of their position and his/her injury will not prevent them from performing their duties.

    b. This Employee is able to perform the duties of their position with limitations imposed by a physician (Limitations will be provided by the physician via your employee.

> c. My employee is covered by a company insurance plan, workman's Compensation Plan, entitled to paid sick leave, paid vacation or other type of paid leave at this time. . . .

Mr. Jones answered "Yes" to the following statement on the form:

> a. As the Employer, I am interested in this member returning to his/her position and wish to discuss limitations imposed.

28. Along with the completed Employer Verification form, Mr. Jones attached a letter "To Whom This May Concern" describing Mr. Sharp's work duties and a "Memo" identifying 15 job elements.

29. For the period from September 4, 2003, to March 3, 2005, Mr. Jones verified that Jones Printing was interested in Mr. Sharp's return to work after his rehabilitation.

30. On a form dated March 10, 2005, the Navy's Physical Evaluation Board issued an informal finding that Mr. Sharp was "Fit to Continue Active Duty" in the Navy Reserve. Later, in a letter dated May 5, 2005, the President of the Physical Evaluation Board notified Mr. Sharp that there were no changes to the informal finding, thus confirming that he was fit for continued Naval Reserve service.

31. On or about May 4, 2005, Mr. Sharp returned to Defendant's facility in order to personally drop-off the most recent Employment Verification form at Mr. Jones' office for his signature. While at Defendant's facility, Mr. Sharp spoke with Don [last name unknown], a coworker, who informed Mr. Sharp, "Gary, if I were you, I would not return here because Harry [Jones] has hired someone else for your position." Because Mr. Jones was not available to accept the Employment Verification form from Mr. Sharp, Mr. Jones' assistant accepted the form.

32. Mr. Sharp returned to Jones Printing on the night of May 4, 2005, to pick-up the form at Mr. Jones' office. Mr. Jones signed and dated the Employer Verification form on May 4, 2005, responding "No," to the following:

   As the Employer, I am interested in this member returning to his/her position and wish to discuss limitations imposed.

33. Although Mr. Jones had previously indicated that he was interested in Mr. Sharp's return to work, on May 4, 2005, Mr. Jones indicated that he would not reemploy Mr. Sharp, despite a declaration by the Navy's Physical Evaluation Board that Mr. Sharp was fit to return to work.

34. On or about May 5, 2005, Mr. Sharp communicated with Mr. Jones via telephone to request reemployment with Jones Printing. During this telephone conversation, Mr. Sharp also notified Mr. Jones that he was ready and fit to return to work as a Bindery Operator, but the Navy required him to be on reserve duty for two weeks. Mr. Sharp asked Mr. Jones whether Mr. Jones preferred that he begin the two week reserve training before returning to work at Jones Printing or after his return. Mr. Jones stated, in a stern voice, that, "It doesn't matter."

35. On or about May 6, 2005, Mr. Sharp spoke with John McMurray, Mr. Sharp's direct supervisor, about his Bindery Operator position at Jones Printing. Mr. McMurray informed Mr. Sharp that Jones Printing had hired a Bindery Operator who performed the same duties as Mr. Sharp two weeks prior to May 6, 2005. Mr. McMurray described the new Bindery Operator's duties and those duties were congruent with those performed by Mr. Sharp. After hearing this information from Mr. McMurray, Mr. Sharp realized that Jones Printing had hired a replacement.

36. From June 21, 2005, to July 22, 2005, Mr. Sharp participated in Naval Reserve Training.

37. Jones Printing failed to re-employ Mr. Sharp in violation of USERRA based upon the fact that: 1) Mr. Jones indicated on the Employer Verification form that Jones Printing did not want Mr. Sharp to return; 2) Mr. Sharp's communications with his co-worker and his supervisor notifying him that Jones Printing had hired someone to replace him as a Bindery Operator; and 3) Mr. Jones' failure to provide Mr. Sharp with a date by which to return to work.

38. Notwithstanding Defendants' clear violation of USERRA and the failure to reinstate Mr. Sharp in May 2005, he nonetheless, from May 2005 to August 2005, contacted Mr. Jones' office approximately once or twice per month and left voicemails asking when Jones Printing wanted him to return to work. Mr. Sharp never received a response to his voicemail messages and Defendants failed to respond to his repeated requests for reemployment.

39. As a direct and proximate result of Defendants' failure to re-instate Mr. Sharp, he suffered significant financial hardship. As a consequence, Mr. Sharp could no longer afford to maintain his home and had to move to live with family members.

40. In mid-August 2005, Mr. Sharp sent a letter to Mr. Jones notifying him that he had sold his house and needed to move due to Defendants' failure to reemploy him. In his letter to Mr. Jones, Mr. Sharp included his new mailing address in Texas where his sister resided.

41. On or about June 13, 2005, Mr. Sharp contacted the Virginia Council on Human Rights/EEOC Norfolk Division Office to file a charge of disability discrimination against Jones Printing based upon a perceived disability.

42. In or about November 2005, Mr. Jones contacted, via telephone, the home of Mr. Sharp's sister in Katy, Texas. Mr. Jones' phone call to Mr. Sharp's sister was Mr. Jones' first attempt, since May 2005, at communicating with Mr. Sharp. Mr. Sharp was unavailable; therefore, his sister answered the phone and spoke with Mr. Jones. When Mr. Sharp's sister recounted her conversation with Mr. Sharp, she described Mr. Jones as being "argumentative." Mr. Sharp returned Mr. Jones' call and left Mr. Jones a voicemail message.

43. Mr. Sharp received a letter from Mr. Jones dated December 15, 2005. In the letter, Mr. Jones stated, for the first time since May 2005, that Jones Printing was offering Mr. Sharp reemployment. However, as Mr. Sharp had previously informed Defendants, he had moved from Virginia Beach, Virginia in August 2005 because he could no longer afford to maintain his home due to the fact that Jones Printing had refused to reinstate him to work.

44. As a direct result of the Defendants' violation of the USERRA and the ADA, Mr. Sharp has suffered depression, mood swings, weight gain, and high blood pressure. Additionally, because of his relocation from Virginia, Mr. Sharp lost visitations with his 10-year old son. Mr. Sharp also has had significant financial losses as a result of Defendants' malfeasance, including, but not limited to, the loss of his home in Virginia.

## STATEMENT OF CLAIMS

**COUNT I:** **Jones Printing Service, Inc. Failed to Reemploy Mr. Sharp as a Bindery Operator in Violation of 38 U.S.C. § 4312 and § 4313.**

45. Mr. Sharp re-allege paragraphs 1-44 and incorporates them fully herein.

46. Section 4312 of USERRA requires employers to promptly reemploy individuals who are absent from a position of employment due to service in the uniformed services.

47. Mr. Sharp alleges that Jones Printing Service, Inc., and/or agents or employees acting on its behalf, unlawfully and willfully violated 38 U.S.C. § 4312 when Jones Printing failed to promptly reemploy Mr. Sharp upon discharge from active duty military service to the Bindery Operator position in accordance with the requirements under 38 U.S.C. § 4313.

48. Jones Printing's failure to comply with the provisions of USERRA and its violation of Mr. Sharp's federally protected rights, as described above, were willful.

49. As a direct and proximate result of the intentional acts of Jones Printing Service, Inc., and/or agents or employees acting on its behalf, Mr. Sharp has suffered grievous harm to his career, as well as significant financial losses, and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of past and future salary, retirement savings and other benefits and entitlements, as well as damage to his professional career and reputation.

50. As a direct and proximate result of the intentional acts of Jones Printing, and/or agents or employees acting on its behalf, Mr. Sharp has suffered depression, mood swings, weight gain, and high blood pressure.

51. As a consequence of the unlawful and willful violation of 38 U.S.C. § 4312 and § 4313 by Jones Printing Service, Inc., it is liable to Mr. Sharp for those damages as well as

reinstatement, attorneys' fees, the costs of this litigation, accrued interest, and liquidated damages.

**COUNT II:   Harry A. Jones Failed to Reemploy Mr. Sharp as a Bindery Operator in Violation of 38 U.S.C. § 4312 and § 4313.**

52. Mr. Sharp re-allege paragraphs 1-51 and incorporates them fully herein.

53. Section 4312 of USERRA requires employers to promptly reemploy individuals who are absent from a position of employment due to service in the uniformed services.

54. Mr. Sharp alleges that Mr. Jones, and/or agents or employees acting on his behalf, unlawfully and willfully violated 38 U.S.C. § 4312 when he failed to promptly reemploy Mr. Sharp upon discharge from active duty military service to the Bindery Operator position in accordance with the requirements under 38 U.S.C. § 4313.

55. Mr. Jones' failure to comply with the provisions of USERRA and his violation of Mr. Sharp's federally protected rights, as described above, were willful.

56. As a direct and proximate result of the intentional acts of Mr. Jones, and/or agents or employees acting on his behalf, Mr. Sharp has suffered grievous harm to his career, as well as significant financial losses, and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of past and future salary, retirement savings and other benefits and entitlements, as well as damage to his professional career and reputation.

57. As a direct and proximate result of the intentional acts of Mr. Jones, and/or employees acting on his behalf, Mr. Sharp has suffered depression, mood swings, weight gain, and high blood pressure.

58. As a consequence of the unlawful and willful violation of 38 U.S.C. § 4312 and § 4313 by Mr. Jones, he is liable to Mr. Sharp for those damages as well as reinstatement, attorneys' fees, the costs of this litigation, accrued interest, and liquidated damages.

**COUNT III:  Jones Printing Service, Inc. Retaliated Against Mr. Sharp When It Failed to Reemploy Mr. Sharp as a Bindery Operator in Violation of 38 U.S.C. § 4311(b)**

59. Mr. Sharp re-allege paragraphs 1-58 and incorporates them fully herein.

60. Section 4311(b) of USERRA prohibits employers from retaliating against employees for enforcing and exercising their rights under USERRA.

61. Mr. Sharp alleges that Jones Printing, and/or agents or employees acting on its behalf, unlawfully and willfully violated 38 U.S.C. § 4311(b) when it failed to promptly reemploy Mr. Sharp upon discharge from active duty military service to the Bindery Operator position. Mr. Sharp's enforcement and exercise of his rights under USERRA were motivating factors for Jones Printing's retaliatory acts against Mr. Sharp.

62. Jones Printing's failure to comply with the provisions of USERRA and its violation of Mr. Sharp's federally protected rights, as described above, were willful.

63. As a direct and proximate result of the intentional acts of Jones Printing, and/or agents or employees acting on its behalf, Mr. Sharp has suffered grievous harm to his career, as well as significant financial losses, and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of past and future salary, retirement savings and other benefits and entitlements, as well as damage to his professional career and reputation.

64. As a direct and proximate result of the intentional acts of Jones Printing and/or employees acting on its behalf, Mr. Sharp has suffered depression, mood swings, weight gain, and high blood pressure.

65. As a consequence of the unlawful and willful violation of 38 U.S.C. § 4311(b) by Jones Printing, it is liable to Mr. Sharp for those damages as well as reinstatement, attorneys' fees, the costs of this litigation, accrued interest, and liquidated damages.

**COUNT IV:   Harry A. Jones Retaliated Against Mr. Sharp When He Failed to Reemploy Mr. Sharp as a Bindery Operator in Violation of 38 U.S.C. § 4311(b)**

66. Mr. Sharp re-allege paragraphs 1-65 and incorporates them fully herein.

67. Section 4311(b) of USERRA prohibits employers from retaliating against employees for enforcing and exercising their rights under USERRA.

68. Mr. Sharp alleges that Mr. Jones, and/or agents or employees acting on his behalf, unlawfully and willfully violated 38 U.S.C. § 4311(b) when he failed to promptly reemploy Mr. Sharp upon discharge from active duty military service to the Bindery Operator position. Mr. Sharp's enforcement and exercise of his rights under USERRA were motivating factors for Mr. Jones' retaliatory acts against Mr. Sharp.

69. Mr. Jones' failure to comply with the provisions of USERRA and his violation of Mr. Sharp's federally protected rights, as described above, were willful.

70. As a direct and proximate result of the intentional acts of Mr. Jones and/or agents or employees acting on his behalf, Mr. Sharp has suffered grievous harm to his career, as well as significant financial losses, and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of past and future salary, retirement savings and

other benefits and entitlements, as well as damage to his professional career and reputation.

71. As a direct and proximate result of the intentional acts of Mr. Jones and/or employees acting on his behalf, Mr. Sharp has suffered depression, mood swings, weight gain, and high blood pressure.

72. As a consequence of the unlawful and willful violation of 38 U.S.C. § 4311(b) by Mr. Jones, he is liable to Mr. Sharp for those damages as well as reinstatement, attorneys' fees, the costs of this litigation, accrued interest, and liquidated damages.

**COUNT V: Disability Discrimination in Violation of the Americans with Disability Act against Jones Printing Service, Inc.**

73. Mr. Sharp re-allege paragraphs 1-72 and incorporates them fully herein.

74. Jones Printing, and/or agents or employees acting on its behalf, violated 42 U.S.C. § 12101, *et seq.*, when it failed to employ Mr. Sharp due to a perception that Mr. Sharp was disabled, despite verification by the Navy that Mr. Sharp was fit and qualified to perform the duties of the Bindery Operator position.

75. Jones Printing's refusal to employ Mr. Sharp was done with malice or reckless indifference to Mr. Sharp's federally protected rights under the ADA.

76. As a direct and proximate result of the intentional acts of Jones Printing, and/or agents or employees acting on its behalf, Mr. Sharp has suffered grievous harm to his career, as well as significant financial losses, and continues to suffer such harm. These injuries and losses include, but are not limited to, loss of promotion opportunities, loss of past and future salary, benefits and entitlements, loss of professional status and career-enhancing opportunities.

77. As a direct and proximate result of the intentional acts of Jones Printing and/or employees acting on its behalf, Mr. Sharp has suffered depression, mood swings, weight gain, and high blood pressure.

78. By virtue of the foregoing, Mr. Sharp is entitled to compensatory damages, punitive damages, plus attorneys' fees and costs, and accrued interest.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests this Court to:

A. Enter judgment for Plaintiff against Defendants on all Counts;

B. Declare that the conduct of Defendants is in violation of USERRA and the ADA;

C. Order Defendants to restore Plaintiff to his former position (or to an appropriate position) and pay Plaintiff full back pay and front pay, including salary, retirement, loss of other benefits, future losses, and other economic losses and entitlements retroactive to the date of any unlawful action found to have occurred in this case;

D. Award Plaintiff liquidated damages, under USERRA, for injuries and losses that he suffered in an amount to be proved at trial;

E. Award Plaintiff compensatory damages, under USERRA and the ADA, for the injuries and losses that he suffered in an amount to be proved at trial;

F. Award Plaintiff punitive damages for the injuries and losses that he suffered in an amount to be proved at trial;

G. Award Plaintiff pecuniary and out of pocket expenses;

H.  Order Defendants to pay all reasonable attorneys' fees, court costs, and expenses incurred by Plaintiff as a result of Defendants' actions and inactions, as well as pre-judgment and post-judgment interest; and

I.  Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff requests a trial by a jury of his peers as to all claims set forth in this Complaint.

Dated: August 31, 2009

Respectfully submitted,

Rosanna C. Lopez, Esq.
Virginia Bar No. 70547
McKinney & Associates, PLLC
1100 Connecticut Ave., N.W., Suite 920
Washington, D.C. 20005
(202) 861-2934 (telephone)
(202) 517-9111 (facsimile)
rclopez@dcemploymentlawyer.com
*Attorneys for Plaintiff Gary L. Sharp*

- 16 -